IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHELBY DEVILLE,

    Petitioner,                    No. CIV S-08-1294 LKK CHS P

    vs.

M. KRAMER, Warden,

    Respondent.        FINDINGS AND RECOMMENDATIONS

_____/

## I.  INTRODUCTION

Petitioner Shelby DeVille is a state prisoner proceeding through counsel with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. §2254.  Petitioner is currently serving a sentence of 15 years to life following his 1990 conviction for second degree murder in the Los Angeles County Superior Court.  Here, petitioner challenges the execution of his sentence, and specifically, the September 7, 2006 decision of the Board of Parole Hearings that he was not suitable for parole.  Based on a thorough review of the record and applicable law, it is recommended that the petition be denied.  The Board's decision has not denied petitioner due process of law under the minimally stringent standard that must be applied.

/////

/////

## II.  BACKGROUND

The basic facts of petitioner's life crime were set forth by the presiding commissioner at the hearing as follows:

> [O]n October 20, 1988, at 6:30 hours... DeVille and his girlfriend met Alvin Dion Mason, [ ] (the victim) to purchase drugs. DeVille's girlfriend took the drugs from the victim but refused to pay.  The victim asked for the drugs back, but DeVille's girlfriend dropped the drugs in the car and told the victim she couldn't find them.  The victim confronted DeVille about the drugs and they began to fight.  DeVille lost the fight when the victim, along with the members with the Elm Street Gang, proceeded to smash DeVille's car.  DeVille called the police but told police he just wanted his car back and he didn't want to follow through with filing a report.  DeVille left the area and returned [at] approximately 09:00 hours with his father's car and gun.  DeVille asked the same men that vandalized his car, "Do ya'll remember me?"  DeVille then opened fire, killing the victim...

(Pet. Ex. A at 9-10.)

Petitioner was convicted of second degree murder and sentenced to serve 15 years to life in state prison.  His minimum eligible parole date passed on June 5, 1999.  On September 7, 2006, a panel of the Board of Parole Hearings ("Board") conducted a hearing to determine petitioner's suitability for parole and concluded that he was not suitable for parole.

Petitioner challenged the Board's decision in the Los Angeles County Superior Court; his claims were denied in a written decision dated October 1, 2007.  The California Court of Appeal, Fourth District, and the California Supreme Court denied petitioner's claims without written opinion.

## III.  ISSUES FOR REVIEW

Petitioner challenges the Board's 2006 denial of parole as arbitrary in violation of due process.  Specifically, petitioner argues that (A) no evidence supports any of the Board's stated reasons for denying parole; (B) no nexus exists between the factors cited by the Board to deny parole and public safety; and (C) denial of parole based on historic, unchanging factors violates due process at this point.

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

## V.  DISCUSSION

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States Constitution does not, in and of itself, create a protected liberty interest in the receipt of a parole

date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). If a state's statutory parole scheme uses mandatory language, however, it "creates a presumption that parole release will be granted" when or unless certain designated findings are made, thereby giving rise to a constitutional liberty interest. *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).

California Penal Code section 3041 sets forth the legislative standards for determining parole for life-sentenced prisoners such as petitioner. Subsection (a) provides that "[o]ne year prior to the inmate's minimum eligible parole release date a panel... shall meet with the inmate and shall normally set a parole release date." Cal Penal Code §3041(a). Subsection (b) provides an exception to the regular and early setting of a lifer's term, if the Board determines "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration..." Cal. Penal Code §3041(b). California state prisoners who have been sentenced to prison with the possibility of parole have a clearly established, constitutionally protected liberty interest in receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16.

Additionally, as a matter of *state* constitutional law, denial of parole to California inmates must be supported by "some evidence" demonstrating future dangerousness. *Hayward v. Marshall*, No. 06-55392, slip op. at 34-35 (9th Cir. April 22, 2010) (en banc) (citing *In re*

1  *Rosenkrantz*, 59 P.3d 174, 210 (Cal. 2002), *In re Lawrence*, 190 P.3d 535, 549 (Cal. 2008), and
2  *In re Shaputis*, 190 P.3d 573, 582 (Cal. 2008)).  The federal Due Process Clause requires, in turn,
3  that California comply with its own quantum of evidence requirement.  *See Pearson v. Muntz*,
4  No. 08-55728, slip op. at 5 (9th Cir. May 24, 2010) (per curiam).  A reviewing court such as this
5  one must "decide whether the California judicial decision approving the... decision rejecting
6  parole was an "unreasonable application" of the California 'some evidence' requirement, or was
7  "based on an unreasonable determination of the facts in light of the evidence." *Hayward v.*
8  *Marshall*, slip op. at 37.

9          The analysis of whether some evidence supports denial of parole to a California
10 state inmate is framed by the state's statutes and regulations governing parole suitability
11 determinations.  *See Irons*, 505 F.3d at 851.  This court "must look to California law to determine
12 the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review
13 the record to determine whether the state court decision holding that these findings were
14 supported by 'some evidence' [ ] constituted an unreasonable application of the 'some evidence'
15 principle." *Id*.

16         Title 15, Section 2402 of the California Code of Regulations sets forth various
17 factors to be considered by the Board in its parole suitability findings for murderers.  The
18 regulation is designed to guide the Board's assessment of whether the inmate poses "an
19 unreasonable risk of danger to society if released from prison," and thus whether he or she is
20 suitable for parole.  *In re Lawrence*, 44 Cal.4th 1181, 1214, 1202 (2008).  The Board is directed
21 to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

5

15 Cal. Code Regs. §2402(b). The regulation also lists several specific circumstances which tend to show suitability or unsuitability for parole. 15 Cal. Code Regs. §2402(c)-(d). The overriding concern is public safety and the focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the proper articulation of the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). In other words, there must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

Here, the Board determined that petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released from prison, and that he was not yet suitable for parole. In so finding, the Board relied heavily on the facts of petitioner's commitment offense. The Board found the circumstances of petitioner's offense to be especially cruel and callous, noting that the offense was committed in a "very dispassionate and calculated manner" which "demonstrated an exceptional callous regard for human suffering," and the potential for "multiple victims being injured or killed." (Pet. Ex. A at 75-77.)

The Board also relied on petitioner's criminal history and misconduct in prison. The Board noted that petitioner had a prior conviction for possession of a controlled substance (cocaine), for which he was on probation at the time of his life crime. (Pet. Ex. A at 29, 77.) The Board further noted that petitioner had incurred three CDC 115 disciplinary reports during his incarceration and two less serious CDC 128s. His prison disciplinary record included citations for mutual combat in 1995, possession of Pruno (prison made wine) in 1998, and horseplay in 2000. (Pet. Ex. A at 44-46, 78.) Most recently, petitioner was disciplined for climbing a security fence in 2001. Petitioner explained that he had scaled a fence to take an unauthorized shower while he was suffering from chicken pox; shortly afterward he received medical permission to shower daily. (Pet. Ex. A at 44-45.)

   The Board also considered petitioner's history of substance abuse and its corresponding relationship to his commitment offense. The Board noted that in petitioner's most recent psychological evaluation, the evaluator opined that petitioner had a "well above average probability for success in the community" but stated that petitioner's most significant risk factor in leading to violence would be the use of cocaine and marijuana, both of which he admitted using prior to committing his life crime. The evaluator concluded that petitioner was no more likely to commit violence than the average citizen so long as he abstained from drugs and alcohol. (Pet. Ex. A at 79.) The Board appeared to be concerned that petitioner had not participated sufficiently in substance abuse and other self-help programming, or that he was not able to sufficiently articulate his gains from such participation or the steps he would take to avoid using drugs once in the free community. (Pet. Ex. A at 78-82.)

   Finally, the Board noted that representatives from the Los Angeles County sheriff's department and district attorney's office had expressed opposition to petitioner's parole. (Pet. Ex. A at 80.)

   On state habeas corpus review, the Superior Court of California, County of Los Angeles, denied petitioner's request for a writ of habeas corpus, finding as follows:

> The Court finds that there is some evidence to support the Board's finding that the Petitioner's offense was carried out in a dispassionate and calculated manner. Cal. Code Regs. tit. 15, §2402, subd. (c)(1)(B). The Petitioner went to his father's house after the confrontation with the victim, retrieved an Uzi that he kept there, drove back to where the victim was and fired at him from the vehicle. These actions were planned, deliberate, dispassionate and calculated. The offense occurred hours after the initial confrontation and after the Petitioner had time to consider his actions and the consequences of those actions.
>
> The Court also finds that there is some evidence to support the Board's finding that the Petitioner's motive was very trivial in relation to the offense. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(E). Although the victim assaulted the Petitioner and smashed his car during the initial confrontation, the Petitioner had already escaped harm and had spoken with sheriff's officers about the incident. He could have filed a police report regarding the incident, but instead chose to get a gun, return to the scene, and

7

> shoot the victim.  At the time, the victim did not pose a threat to the Petitioner.  The earlier fight and vandalism on the Petitioner's car are very trivial motives for returning to the scene hours later, shooting an Uzi into a crowd, and killing the victim.
> The Board als considered the Petitioner's recent 115 in 2001, his prior conviction for possession of narcotics, and his limited substance abuse-related programming.  While these factors, alone, may not justify a finding of unsuitability, the Board may properly consider them as relevant to a determination of whether the Petitioner is suitable for parole.  Cal. Code Regs., tit. 15, §2402(b).  Certainly, the Petitioner's continued inability to conform to rules, combined with his history of drug abuse and limited self-help programming regarding it constitutes some evidence that he continues to be an unreasonable risk of danger to public safety, in light of the relationship of his drug abuse and the very serious commitment offense.

(Pet. Ex. G at 1-2.)

First, petitioner's argument regarding the Board's reliance on the "trivial" nature of his offense to deny parole (*see* 15 Cal. Code Regs. §2402(c)(1)(E)) is well taken.  A finding of "triviality" sufficient to justify the denial of parole must relate to present dangerousness.  *See In re Scott*, 119 Cal.App.4th 871, 893 (2004).  In order to fit the regulatory description, the prisoner's motive must have been more trivial than those which conventionally drive people to commit the offense in question.  *See Id*. (reasoning that all motives for murder could reasonably be deemed "trivial").  Anger, rage, and retaliation for damaging a car are trivial reasons to kill a person, yet not substantially more trivial than those which conventionally drive offenders convicted of second degree murder to have committed their crime, especially where drugs or alcohol are involved.

On the other hand, petitioner's commitment offense does fit the regulatory description for one that was carried out in a dispassionate and calculated manner.  *See* 15 Cal. Code Regs. §2402(c)(1)(B).  Petitioner argues that his crime was not dispassionate, because according to the Board, his motive was based on anger and rage, emotions which do not lack passion.  Indeed, the victim had assaulted petitioner and caused damage to petitioner's car.  But petitioner did not murder the victim during the passion of this confrontation or even immediately

afterward. Instead, *hours passed* during which time petitioner went to his father's house and retrieved a military issued Uzi which he kept there. Petitioner then drove back to the victim's location, firing the deadly shot from inside the vehicle. These facts support a finding that the shooting was calculated and premeditated as well as dispassionate. The relevant regulation poses "an execution-style murder" as an example of a dispassionate and calculated offense; petitioner's drive-by shooting is comparable. The fact that petitioner's offense was not completely devoid of any emotion whatsoever prior to its commission does not preclude a finding that it was "carried out in a dispassionate and calculated manner."

      Premeditation, deliberation, and willfulness are not elements of second degree murder in California (*People v. Nieto Benitez*, 4 Cal.4th 91, 102 (1992)), thus the facts of petitioner's offense were more than minimally necessary to sustain his second degree murder conviction. *See In re Dannenberg*, 35 Cal.4th 1061, 1095 (2005). Petitioner's offense is properly characterized as especially heinous, atrocious, or cruel under the relevant regulatory description because it was carried out in a dispassionate and calculated manner. *In re Rico*, 171 Cal.App.4th 659, 682-83 (2nd Dist. 2009) (drive-by shooting found especially heinous "because it was carried out in a dispassionate manner and was not the result of longstanding stress").

      In order for the facts of petitioner's commitment offense to constitute a valid reason to deny parole, there must be some rational nexus between those facts and the ultimate conclusion that he continues to be a threat to public safety. *In re Lawrence*, 44 Cal.4th at 1214, 1227 ("the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or [ ] current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety") (emphasis in original). The relevant inquiry is an individualized one: "whether the circumstances of the commitment offense, when considered in

9

light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense." *In re Lawrence*, 44 Cal.4th at 1221. The passage of time and attendant changes in the inmate's psychological or mental attitude are relevant considerations. *Id.*; *see also, e.g., In re Rico*, 171 Cal.App.4th at 683 (finding no evidence of current dangerousness even though inmate's offense, a gang related drive-by shooting, was especially heinous, due to passage of time, evidence of rehabilitation, and the fact that the inmate had renounced his gang affiliation years prior, among other reasons).

   Petitioner's offense occurred approximately 18 years prior to the 2006 parole suitability determination at issue. A decision based solely on the gravity of a commitment offense that occurred 18 years prior could be arbitrary if it no longer held any probative value to an assessment of the inmate's current or future dangerousness. In this case, the Board cited additional, non-historical factors to support its conclusion that petitioner still posed an unreasonable risk of danger. Those reasons, considered in conjunction with the circumstances of the commitment offense and petitioner's substance abuse history, constitute some evidence that petitioner remained unsuitable for parole at the time of his 2006 hearing.

   In particular, the Board considered, and the state superior court relied upon, evidence relating to petitioner's conduct during his incarceration. The superior court specifically cited petitioner's "continued inability to conform to rules, combined with his history of drug abuse and limited self-help programming."

   With respect to substance abuse prevention programming, petitioner participated in Narcotics Anonymous previously and had resumed attendance since his last Board hearing. Petitioner is Buddhist and it is clear from the record that he has spent a good deal of time relating and adapting the 12 steps of Narcotics Anonymous to his own religious practice. Nevertheless, the Board appeared to be concerned whether he had developed all the tools he will need to abstain from drugs in the free community. Their concern appeared to be based on some of the responses petitioner gave at the hearing. The presiding commissioner stated to petitioner:

> So far as your institutional behavior, you've done some well [sic] in some areas, but the area that the Panel has concerned about [sic] is in the area of the substance abuse program. And again noting the substance abuse history, the relationship of substance abuse to the commitment offense, the confidence that the Panel is going to need to have is that you're realizing substance abuse is something that's important to you, not because the Board wants you to do it, but because you've internalized and you've embraced it. I guess that's the word that I'm really encourage [sic] you to take a look at when you take a look at the transcript, is that you've embraced the reality that substance abuse issues got you where you are today, and acknowledging that is what's going to hopefully get you out of where you are today. And that's the message that we want you to leave with today, and I think it's real important for you to find a substance abuse program that's consistent with your spiritual value and do one that is important to you. You can supplement it certainly by things that [you] are doing in your journal. We took note of the fact that you did a real good job on your journal, so continue doing that... One of the other things -- that we were really get ago [sic] true picture of what your feelings were. Go back and take a look at that transcript and see if you can pick up some point in time where maybe when looking at you even noticed [sic] inside yourself maybe something, some trigger went off or something, but we seemed to lose a lot of the early connection that we had with you, and I think that was important... So take a look at the transcript and look at your words and see if those are your words or those are words that came to you from some reading or something else because one of the fears is we want to make sure that we're always hearing from you and what things mean to you not necessarily some written words that you've seen somewhere.

(BPHT at 77-78, 80-81.)

The ultimate question of petitioner's potential threat to public safety "must be supported by some evidence, not merely by a hunch or intuition." *In re Lawrence*, 44 Cal.4th at 1213. Petitioner discussed at length the work he was doing in the area of substance abuse prevention and his remarks did not appear to be disingenuous. On the other hand, the most recent psychological evaluator conditioned petitioner's likelihood of having a successful parole on his ability to abstain from drug and alcohol use. (Pet. Ex. B at 8.)

The state superior court cited petitioner's lack of significant participation in self-help programming overall, not just the area of substance abuse prevention. With respect to other self-help programming, evidence in the record showed that petitioner had participated in

programs entitled "Basic Alternatives to Violence" and "Phases Life Skills programs." (Pet. Ex. B at 47.) More recently, he had participated in a single day Anger Transformation workshop on July 5, 2006 and a Breaking Barriers workshop on an undisclosed date. (Pet. Ex. B at 48.) On this record, it was not unreasonable for the state superior court to conclude that petitioner's participation in self-help programming was somewhat limited over his many years of incarceration.

Participation or lack thereof in self-help programming is probative to an assessment of petitioner's current dangerousness in light of the nature of his commitment offense and other factors in the record, including his prison disciplinary history. During his incarceration, petitioner has been cited for a handful of violations, some serious. At the time of his 2006 hearing, petitioner had been disciplinary free for approximately five years. In 2001, however, he received a 115 disciplinary report for climbing a security fence to take a shower. Also troubling is his 1998 disciplinary citation for possession of Pruno. As the Board recognized, remaining free of discipline for a substantial period of time was a recent gain for petitioner.

Institutional behavior is one of the suitability factors the Board is authorized to consider under state law. *See* 15 Cal. Code Regs. §2281(d)(9). Petitioner urges that his disciplinary history was no longer probative to an assessment of his current dangerousness at the time of the 2006 hearing. Petitioner's 2001 disciplinary conviction for climbing a security fence to take a shower did not involve violence, but nevertheless was a serious offense that posed a risk of threat to institutional safety and security regardless of petitioner's motives at the time. The 2001 disciplinary conviction was still somewhat near in time to the 2006 parole decision. Petitioner's 1998 disciplinary conviction for possession of Pruno is more remote in time but also a serious matter, given petitioner's history of substance abuse and its relationship to his commitment offense. Not enough time had passed at the time of the 2006 hearing for a reviewing court such as this one to determine that such serious disciplinary offenses no longer

held *any* probative value to petitioner's a parole suitability determination.  Moreover, although the Board relied on these disciplinary infractions to deny petitioner parole in 2001 as well, no rule prevents the Board from relying on the same factors in a subsequent parole decision, so long as they still hold some probative value.

On this record, there is some evidence to support the Board's conclusion that petitioner was not suitable for parole at the time of his 2006 hearing.  Many positive factors appear in the record which are supportive of petitioner's release, such that a different panel might have concluded that the factors demonstrating suitability outweighed those demonstrating unsuitability.  This court, however, is not authorized to re-weigh those factors, substituting its judgment for that of the Board.  In this case, the circumstances of petitioner's commitment offense, combined with his history of drug abuse, limited self-help programming, and disciplinary record in prison, provide the required modicum of evidence to support the Board's 2006 denial of parole.

## VI.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 15, 2010

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE